```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/23/2023
```

December 22, 2023



The Honorable Gregory H. Woods
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

**Sarah Krissoff**
Direct Phone 212-908-1388
Direct Fax 646-225-5128
skrissoff@cozen.com

**MEMORANDUM ENDORSED**

Re: **FTC v. Voyager Digital, LLC, 23-cv-8960 (S.D.N.Y)**

Dear Judge Woods:

On behalf of Defendant Stephen Ehrlich ("Mr. Ehrlich") and Relief Defendant Francine Ehrlich ("Mrs. Ehrlich"), we respectfully seek a pre-motion conference to file a motion to dismiss. The FTC does not consent to this request.

## I.   BACKGROUND

Mr. Ehrlich was the CEO of Defendants Voyager Digital LLC, Voyager Digital Holdings, Inc., and Voyager Digital Ltd. (together, "Voyager"). Until declaring bankruptcy in July 2022, Voyager operated a platform that, among other things, allowed customers to buy, sell, and exchange cryptocurrencies. Customers could fund their accounts with cash deposits and Voyager maintained omnibus accounts at Metropolitan Commercial Bank ("MCB")—an insured depository institution—that held customers' cash deposits.

The FTC appears to allege that Voyager made deceptive claims regarding the availability of FDIC insurance. In support of this theory, the FTC cites only statements concerning customers' cash deposits, and yet concedes that cash deposits were held at MCB and that FDIC insurance would protect those deposits in the event of MCB's failure. (Complaint ¶¶ 23, 30 ("Compl.").) As confirmed by the Complaint, Voyager never claimed that cryptocurrency assets were subject to FDIC insurance. Moreover, even concerning customers' cash deposits, the FTC tells only half the story. It fails to disclose that within a week of the bankruptcy filing, Voyager sought permission to honor withdrawals of cash deposits. The Bankruptcy Court authorized the withdrawals and customers were able to withdraw and recover 100% of their cash deposits within a few weeks.

Despite all of this, the FTC claims that Voyager and Mr. Ehrlich made the false or misleading claim that "consumers' deposits held with Defendants [were] FDIC insured." (*Id.* ¶¶ 45, 55.) While the FTC identifies a handful of allegedly deceptive representations, there is only a single representation regarding FDIC insurance attributed to Mr. Ehrlich. (*Id.* ¶ 32.) But other than

3 WTC    175 Greenwich Street    55th Floor    New York, NY 10007
212.509.9400    800.437.7040    212.509.9492 Fax    cozen.com

The Honorable Gregory H. Woods
December 22, 2023
Page 2

the bare allegation that Mr. Ehrlich was the CEO (*id.* ¶ 11), the FTC does not allege that Mr. Ehrlich had any role in drafting or disseminating Voyager's statements.

## II.   GROUNDS FOR MOTION TO DISMISS

The Complaint fails to state a plausible claim against Mr. Ehrlich under either the Federal Trade Commission Act ("FTC Act") or the Gramm Leach-Bliley Act ("GLB Act"). It follows that Mrs. Ehrlich should be dismissed as a relief defendant. *E.g.*, *SEC v. Kameli*, 373 F. Supp. 3d 1194, 1205 (N.D. Ill. 2019).

### A.   The Complaint Does Not Plausibly Allege a Violation of the FTC Act

For Count I, "the FTC must show three elements: [1] a representation, omission, or practice, that [2] is likely to mislead consumers acting reasonably under the circumstances, and [3] the representation, omission, or practice is material." *FTC v. Verity Int'l, Ltd.*, 443 F.3d 48, 63 (2d Cir. 2006). Because this claim sounds in fraud, it is subject to the heightened pleading standards of Rule 9(b), including that the FTC explain with particularity why a representation was deceptive. *E.g.*, *FTC v. Lights of Am., Inc.*, 760 F. Supp. 2d 848, 854 (C.D. Cal. 2010). Whether viewed through the lens of Rule 9(b) or Rule 8, Count I should be dismissed for failure to state a claim.

*First*, the representation attributed to Mr. Ehrlich was not "likely to mislead consumers acting reasonably under the circumstances." *Verity Int'l, Ltd.*, 443 F.3d at 63. Indeed, it was the opposite. Mr. Ehrlich stated that "USD is held by our banking partner, Metropolitan Commercial Bank, which is FDIC insured" and "[t]he cash you hold with Voyager is protected up to $250,000—which means it's as safe with us as at a bank." (Compl. ¶ 32.) This statement was not deceptive because, as the FTC concedes, "USD" (i.e., cash) was, in fact, held by MCB and MCB was, in fact, FDIC-insured. (Compl. ¶¶ 23, 30.) Moreover, the phrase cash held with Voyager is "as safe with us at a bank"—read in the context of the overall statement—accurately conveys that cash deposits were held by an FDIC-insured bank. *FTC v. Five-Star Auto Club, Inc.*, 97 F. Supp. 2d 502, 528 (S.D.N.Y. 2000) (noting that the Court must view representations "as a whole without emphasizing isolated words or phrases apart from their context").

*Second*, for Mr. Ehrlich to be liable for Voyager's FDIC-related representations, the FTC must set forth sufficient allegations to show that he "participated in the deceptive acts or had the authority to control them" *and* "had knowledge of the misrepresentations, was recklessly indifferent to the truth or falsity of the misrepresentation, or was aware of a high probability of fraud along with an intentional avoidance of the truth." *FTC v. Consumer Health Benefits Ass'n*, No. 10-3551, 2012 WL 1890242, at *5 (E.D.N.Y. May 23, 2012). Bare allegations that the defendant has a certain title and "control" over general corporate conduct do not suffice. *E.g.*, *FTC v. Quincy Bioscience Holding Co., Inc.*, 389 F. Supp. 3d 211, 221 (S.D.N.Y. 2019).

Yet that is exactly what the FTC has done here. The FTC alleges that Mr. Ehrlich was Voyager's CEO and involved in "day-to-day operations." (Compl. ¶ 11.) But the Complaint is devoid of any allegations whatsoever that show that Mr. Ehrlich was involved in the drafting or publication of Voyager's alleged statements. Voyager, of course, was a public company with a full complement of professionals in all applicable areas of operations.

*Finally*, even if there were some plausible basis for individual liability for corporate statements, Voyager's statements were likewise not deceptive. Voyager accurately represented that cash deposits benefitted from FDIC insurance by virtue of Voyager's relationship with a

banking partner, in some cases expressly identified as MCB. (Compl. ¶¶ 25–28.)[1] Nor does the FTC allege that Voyager claimed that cryptocurrency assets were FDIC insured. Courts should "interpret express statements as intending to say exactly what they say" and the FTC cannot manufacture or insert misrepresentations that simply are not there. *Five-Start Auto Club, Inc.*, 97 F. Supp.2d at 528.

### B. The Complaint Does Not Plausibly Allege a Violation of the GLB Act

To state a claim under the GLB Act—a largely untested data privacy statute that is inapt for run-of-the-mill claims for deceptive advertisements—the FTC must plausibly allege that Mr. Ehrlich made a false, fictitious, or fraudulent statement in order to obtain customer information of a financial institution. 15 U.S.C. § 6821(a)(2). Like Count I, Count II sounds in fraud and is subject to Rule 9(b)'s pleading requirements. *See Rombach v. Chang*, 355 F.3d 164, 172 (2d Cir. 2004).

For the reasons discussed above, the Complaint does not plausibly allege that Mr. Ehrlich's sole alleged statement regarding FDIC insurance was deceptive—let alone false, fictitious, or fraudulent—or that he is liable for Voyager's statements that were, in any event, not deceptive. Moreover, the FTC fails to allege that such statements were made in order to fraudulently obtain customer information. For these and other reasons, the FTC is relying on a data privacy statute as a catch-all fraud statute, and its claim should be dismissed.

### C. The FTC is Not Entitled to Any Relief in Connection With Its Claims

The Complaint should also be dismissed because the FTC has not plausibly alleged grounds for injunctive or monetary relief under Section 13 or Section 19 of the FTC Act.

***First***, for injunctive relief under Section 13, the FTC must plausibly allege that Mr. Ehrlich "is violating" or is "about to violate" the law. 15 U.S.C. § 53(b)(1). Here, Voyager declared bankruptcy well over a year ago and Mr. Ehrlich is no longer CEO. There is no allegation that Mr. Ehrlich is poised otherwise to make any representations about FDIC insurance. In these circumstances, there is no plausible basis for injunctive relief, let alone the kind of limitless injunction in the FTC's settlement with Voyager. (ECF No. 35 at 5–7.) *E.g.*, *FTC v. AdvoCare Int'l, L.P.*, No. 19-cv-715, 2020 WL 6741968, at *5–6 (E.D. Tex. Nov. 16, 2020).

***Second***, any request for monetary relief under Section 19 is conditioned on the FTC alleging a violation of a "rule" respecting unfair or deceptive acts. 15 U.S.C. § 57b(a)(1).[2] The FTC has not alleged any such violation in Count I. In Count II, the FTC relies on a circuitous reading of several statutes to argue that the GLB Act itself is a trade regulation rule. (Compl. ¶¶ 48–53.) It is not, and the statutory language does not establish Congress's intent to dispense with the requirement that the FTC allege a violation of a rule promulgated through notice and comment.

***Finally***, the FTC has not plausibly alleged a theory of recoverable monetary relief. The Complaint alleges that Voyager and Mr. Ehrlich made misleading claims regarding FDIC insurance, but Voyager customers were able to recover 100% of their cash deposits. Moreover, to the extent the

---

[1] The Complaint is rife with (i) numerous irrelevant allegations apparently added to bolster the insufficient allegations concerning Mr. Ehrlich, such as amorphous references to cryptocurrency "scams;" (ii) various quotations without attribution or context; and (iii) the conflation of the stablecoin "USDC" with entirely distinct cash deposits. (*E.g.*, Compl. ¶¶ 19, 24, 25.)

[2] The statute also contains a three year statute of limitations, which means that liability cannot be premised on Voyager's December 2019 blog post. (Compl. ¶ 25.)

The Honorable Gregory H. Woods
December 22, 2023
Page 4

FTC believes that statements specifically regarding cash deposits caused any losses of cryptocurrency – that the FTC contends could be redressed through Section 19 – they failed to articulate such theory in the Complaint.[3]

Respectfully submitted,

*Sarah Krissoff*

Sarah Krissoff

cc: All counsel of record via ECF

SK

Application granted. Defendant and Relief Defendant's request for a pre-motion conference is granted. The Court will hold a teleconference regarding the proposed motion to dismiss on January 3, 2024 at 3:00 p.m. The parties are directed to the Court's Individual Rules of Practice in Civil Cases, which are available on the Court's website. Rule 2 of the Court's Individual Rules contains the dial-in number for the conference and other relevant instructions. The parties are specifically directed to comply with Rule 2(C) of the Court's Individual Rules. The Clerk of Court is directed to terminate the motion pending at Dkt. No. 38.

SO ORDERED.

Dated: December 23, 2023
New York, New York

_____
GREGORY H. WOODS
United States District Judge

---

[3] With respect to Mrs. Ehrlich, while the FTC makes the bare allegation that she received funds "traceable" to deceptive conduct (Compl. ¶ 58), there is no attempt to allege how such funds – which according to the FTC are the result of sales of Voyager stock and of the family home (*id.* ¶ 12) – are traceable to alleged deceptive statements regarding FDIC insurance.

LEGAL\67510050\2