UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FEDERAL TRADE COMMISSION,

    Plaintiff,

    v.

VOYAGER DIGITAL, LLC, et al.,

    Defendants.

Case No. 1:23-cv-08960-GHW-SLC

**JOINT ELECTRONIC DISCOVERY
SUBMISSION AND ~~PROPOSED~~ ORDER**

    One or more of the parties to this litigation have indicated that they believe that relevant information may exist or be stored in electronic format, and that this content is potentially responsive to current or anticipated discovery requests. This Model Joint Submission and Proposed Order (and any subsequent to this) shall be the governing document(s) by which the parties and the Court manage the electronic discovery process in this action. The parties and the Court recognize that this Model Joint Submission and Proposed Order is based on facts and circumstances as they are currently known to each party, that the electronic discovery process is iterative, and that additions and modifications to this Submission may become necessary as more information becomes known to the parties.

**(1)**     **Brief Joint Statement Describing the Action**:

    Plaintiff alleges that Defendant Stephen Ehrlich has violated Section 5(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a), and Section 521 of the Gramm-Leach-Bliley Act ("GLB Act"), 15 U.S.C. § 6821, by making false, misleading, or unsubstantiated representations regarding FDIC insurance in connection with the marketing and sale of Voyager and its affiliates' (collectively, "Voyager") cryptocurrency service. Plaintiff alleges that Relief Defendant Francine Ehrlich directly or indirectly received funds and/or other assets to which she has no legitimate claim that were obtained from Voyager customers through the deceptive, unfair, and/or unlawful acts or practices described in the Complaint.

    Defendant Stephen Ehrlich denies that he violated the FTC Act or GLB Act in connection with representations that he and/or Voyager made regarding the availability of FDIC insurance.

As addressed in Mr. Ehrlich's motion to dismiss, the Complaint fails to state a plausible claim under either the FTC Act or GLB Act. Among other things, the Complaint attributes one allegedly misleading statement to Mr. Ehrlich in which he accurately represented that Voyager customer's cash deposits were held by a FDIC-insured bank. The Complaint does not plausibly allege that Mr. Ehrlich participated in and had any knowledge of any remaining alleged misstatements attributed to Voyager, which, in any event, were not misleading. In addition, the FTC has not plausibly alleged a basis for injunctive relief under the FTC Act, nor has it plausibly alleged a basis for monetary relief under the GLB Act, which is a consumer privacy statute that protects against the unauthorized access of consumer records. In the event any of the FTC's claims survive a motion to dismiss, Mr. Ehrlich anticipates that his defenses will include the lack of any misleading statement regarding FDIC insurance, the lack of any requisite participation or knowledge with respect to any alleged misstatement by Voyager regarding FDIC insurance, the lack of any basis for injunctive relief, and the lack of any consumer injury related to cash deposits, including but not limited to when all such cash deposits were promptly and fully returned to Voyager's customers following Voyager's bankruptcy.

Relief Defendant Francine Ehrlich denies that she has received any ill-gotten funds and/or lacks a legitimate claim to funds allegedly transferred to her by Defendant Stephen Ehrlich in the ordinary course of estate planning and administration.

    (a)    **Estimated amount of Plaintiff(s)' Claim(s):**

        __ Less than $100,000
        __ Between $100,000 and $999,999
        __ Between $1,000,000 and $49,999,999
        _x_ More than $50,000,000
        _x_ Equitable Relief
        __ Other (if so, specify) _____

    (b)    **Estimated amount of Defendant(s)' Counterclaim(s)/Cross-Claim(s):**

        __ Less than $100,000
        __ Between $100,000 and $999,999
        __ Between $1,000,000 and $49,999,999
        __ More than $50,000,000
        __ Equitable Relief
        __ Other (if so, specify) _____

**(2)**     **Competence**: Counsel certify that they are sufficiently knowledgeable in matters relating to their client(s)' technological systems to competently discuss issues relating to electronic discovery, or have involved someone competent to address these issues on their behalf.

**(3)**     **Meet and Confer**: Pursuant to Fed. R. Civ. P. 26(f), counsel **must** meet and confer regarding matters relating to electronic discovery before the Initial Pretrial Conference (the Rule 16 Conference). Counsel now certify that they met and conferred to discuss these issues on December 1, 2023, December 14, 2023, and January 26, 2024.

**(4)** **<u>Unresolved Issues</u>**: After the meet-and-confer conference(s) taking place on the date(s) listed above, the following issues remain outstanding and/or require court intervention: \_\_ Preservation; \_\_ Search and Review; \_\_ Source(s) of Production; \_\_ Form(s) of Production; <u>x</u> Identification or Logging of Privileged Material; \_\_ Inadvertent Production of Privileged Material; \_\_ Cost Allocation; and/or \_\_ Other. Please briefly describe any specific issues below:

<u>The parties plan to propose a Rule 502(d) order to the Court</u>.

To date, the parties have addressed the following issues:

**(5)** **<u>Preservation</u>:**

    (a)     The parties have discussed the obligation to preserve potentially relevant electronically stored information and agree to the following scope and methods for preservation, including but not limited to: retention of electronic data and implementation of a data preservation plan; identification of potentially relevant data; disclosure of the programs and manner in which the data is maintained; identification of computer system(s) utilized; and identification of the individual(s) responsible for data preservation, etc. To the extent that the parties have reached agreement as to preservation methods, provide details below:

<u>The parties have discussed their obligations to preserve discoverable information in their possession, custody, or control. The parties have taken reasonable steps to preserve and retain discoverable electronic data, are identifying potentially relevant material, and have discussed potential sources for discoverable electronically stored information.</u>

    (b)     State the extent to which the parties have disclosed or have agreed to disclose the dates, contents, and/or recipients of "litigation hold" communications:

<u>The parties each have litigation holds in place.</u>

    (c)     The parties anticipate the need for judicial intervention concerning the duty to preserve, the scope, or the method(s) of preserving electronically stored Information:

<u>The parties do not anticipate the need for judicial intervention at this time.</u>

**(6)** **<u>Search and Review</u>:**

    (a)     The parties have discussed methodologies or protocols for the search and review of electronically stored information, as well as the disclosure of techniques to be used. Some of the approaches that may be considered include: the use and exchange of keyword search lists, "hit reports," and/or responsiveness rates; concept search; machine learning, or other advanced analytical tools; limitations on the fields or file types to be searched; date restrictions; limitations on whether back-up, archival, legacy, or deleted electronically stored information will be searched; testing; sampling; etc. To the extent the parties have reached agreement as to search and

3

        review methods, provide details below:

        <u>The parties agree that prior to responding in writing to a discovery request that may result in the production of documents that may include ESI, they will meet and confer, where appropriate and proportional, appropriate terms and queries, file type and date restrictions, data sources (including custodians), and other appropriate computer- or technology-aided methodologies to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery. Upon request, the producing party will disclose the final search terms or queries used to identify ESI in response to a discovery request. The parties further agree that the use of search terms does not relieve any party of its duty, subject to Rule 26(b), to search for, collect, and produce non-privileged responsive documents that are not amenable to collection through the use of search terms, nor of its duty to produce non-privileged responsive documents of which it becomes aware.</u>

(b)     State if the parties anticipate the need for judicial intervention concerning the search and review of electronically stored information:

        <u>The parties do not anticipate the need for judicial intervention at this time.</u>

**(7)**     **Production:**

(a)     Source(s) of Electronically Stored Information: The parties anticipate that discovery may occur from one or more of the following potential source(s) of electronically stored information [e.g., email, word processing documents, spreadsheets, presentations, databases, instant messages, web sites, blogs, social media, ephemeral data, etc.]:

        Plaintiff(s): <u>The Plaintiff anticipates sources of electronically stored information to include the Defendants' and Relief Defendant's financial records, email, word processing documents, text messages, voicemails, mobile app communications, spreadsheets, presentations, databases, advertisement/marketing materials, instant messaging, chats, blogs, websites, social media, and promotional materials</u>.

        Defendant(s): <u>Defendant Stephen Ehrlich and Relief Defendant Francine Ehrlich anticipate sources of electronically stored information to include electronic documents and records, including but not limited to emails, word processing documents, spreadsheets, presentations and other materials in the above categories, in the possession, custody or control of Plaintiff, as well as electronic documents and records in the possession, custody or control of various non-parties including those identified in Defendants' Initial Disclosures.</u>

(b)     Limitations on Production: The parties have discussed factors relating to the scope of production, including but not limited to: (i) number of custodians; (ii) identity of custodians; (iii) date ranges for which potentially relevant data will

        be drawn; (iv) locations of data; (v) timing of productions (including phased discovery or rolling productions); and (vi) electronically stored information in the custody or control of non-parties. To the extent the parties have reached agreements related to any of these factors, describe below:

        <u>None at this time.</u>

(c)      Form(s) of Production:

    (1)      The parties have reached the following agreements as to the form(s) of productions:

        <u>The parties agree that the production of documents shall be produced in accordance with the ESI Production Protocol ("Production Protocol") attached hereto as Exhibit A, including but not limited to the procedures governing the production of ESI metadata.</u>

    (2)      Please specify any exceptions to the form(s) of production indicated above (e.g., word processing documents in TIFF with load files, but spreadsheets in native form):

        <u>The parties agree to discuss, when applicable, potential exceptions to the Production Protocol that may be required for specific documents or sets of documents.</u>

    (3)      The parties anticipate the need for judicial intervention regarding the following issues concerning the form(s) of production:

        <u>The parties do not anticipate the need for judicial intervention at this time.</u>

(d)      Privileged Material:

    (1)      Identification: The parties have agreed to the following method(s) for the identification (including the logging, if any, or alternatively, the disclosure of the number of documents withheld), and the redaction of privileged documents:

    <u>If a party asserts a claim of privilege over any relevant material, the party shall provide a privilege log including the following information about that material, except as specified below:</u>
     1. <u>The type of document, if applicable (letter, memorandum, email);</u>
     2. <u>The date it was created;</u>
     3. <u>The general subject matter;</u>
     4. <u>The names, relevant positions, and relevant organizations of all senders, authors, and recipients of the material; and</u>
     5. <u>The specific basis on which the party contends they are entitled to withhold the document from production.</u>
    <u>The parties are not required to produce or log as privileged the following:</u>

    a. <u>Privileged or work-product-protected material generated after the FTC filed its Complaint;</u>

    b. <u>Privileged or work-product-protected material generated on or after November 11, 2022, and shared exclusively among attorneys, paralegals, investigators, or law clerks; exclusively among Defendants' counsel and their clients; or exclusively among FTC counsel and FTC employees.</u>

    c. <u>Communications, draft reports, and other documents between counsel for the parties and their consulting or testifying experts except as otherwise provided under Federal Rule of Civil Procedure 26(a)(2).</u>

    d. <u>Draft litigation filings.</u>

(2) Inadvertent Production/Claw-Back Agreements: Pursuant to Fed R. Civ. Proc. 26(b)(5) and Fed. R. Evid. 502(e), the parties have agreed to the following concerning the inadvertent production of privileged documents (e.g. "quick-peek" agreements, on-site examinations, non-waiver agreements or orders pursuant to Fed. R. Evid. 502(d), etc.):

    i. <u>Pursuant to Fed. R. Evid, 502(d), the inadvertent production of a privileged or work-product-protected document ("Protected Material") is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. Nothing in this order overrides any attorney's ethical responsibilities to refrain from examining or disclosing materials that the attorney knows or reasonably should know to be privileged and to inform the party or person that produced the materials of such occurrence.</u>

    ii. <u>The parties shall take reasonable steps to prevent the disclosure of Protected Material. In the event of such disclosure, the parties shall follow the procedures set forth in Fed. R. Civ. P. 26(b)(5)(B) and herein for materials produced in discovery in this action by both parties and nonparties.</u>

    iii. <u>If a receiving party discovers material produced to it by a party or nonparty in this action that the receiving party reasonably believes to be Protected Material, the receiving party shall promptly notify the producing party in writing and shall cease review of that material.</u>

    iv. <u>If the parties disagree about the applicability of any asserted privilege or other protection for material that the producing party contends is Protected Material and should not have been disclosed, the parties shall promptly meet and confer to attempt to resolve the issue. If the parties are unable to resolve a disagreement about the applicability of any asserted privilege or other protection that the producing party contends is Protected Material and should not have been disclosed, the parties may submit such disagreement to the Court for resolution.</u>

(3) The parties have discussed a 502(d) Order: Yes <u>x</u>; No <u>    </u>

*The provisions of any such proposed Order shall be set forth in a separate document and presented to the Court for its consideration.*

(e) Cost of Production: The parties have analyzed their client's data repositories and have estimated the costs associated with the production of electronically stored information. The factors and components underlying these costs are estimated as follows:

(1) Costs:

Plaintiff:

Based on the information available, and because the documents and information relevant to this matter are primarily in the possession of the Defendant and Relief Defendant, the Plaintiff expects its production costs to be limited.

Defendant(s):

Based on the information available, and because the documents and information relevant to this matter are primarily in the possession of Plaintiff and various non-parties, Defendants expect their production costs to be limited but the potential costs of non-party discovery to be substantial.

(2) Cost Allocation: The parties have considered cost-shifting or cost-sharing and have reached the following agreements, if any:

The parties have not reached such an agreement. Absent court order, the costs of discovery shall be borne by each party.

(3) Cost Savings: The parties have considered cost-saving measures, such as the use of a common electronic discovery vendor or a shared document repository, and have reached the following agreements, if any:

The parties have not reached such an agreement.

(f) State if the parties anticipate the need for judicial intervention concerning the production of electronically stored information:

The parties do not anticipate the need for judicial intervention at this time.

**(8) Other Issues:**

None at this time.

The preceding constitutes the agreement(s) reached, and disputes existing, (if any) between the parties to certain matters concerning electronic discovery as of this date. To the extent additional agreements are reached, modifications are necessary, or disputes are identified, they will be outlined in subsequent submissions or agreements and promptly presented to the Court.

| Party: Federal Trade Commission | By: */s/ Sanya Shahrasbi* |
|---|---|
|  | Quinn Martin<br>Sanya Shahrasbi<br>Larkin Turner<br>FEDERAL TRADE COMMISSION<br>600 Pennsylvania Ave., NW<br>Mail Drop CC-10232<br>Washington, DC 20580<br>(202) 326-2709<br>qmartin@ftc.gov<br>sshahrasbi@ftc.gov<br>lturner@ftc.gov |
| Party: Defendant Stephen Ehrlich & Relief Defendant Francine Ehrlich | By: */s/ Helen Harris*<br>Helen Harris<br>DAY PITNEY LLP<br>One Stamford Plaza, 7th Floor<br>263 Tresser Boulevard<br>Stamford, CT 06901<br>(203) 977-7418<br>hharris@daypitney.com<br><br>Matthew Letten<br>DAY PITNEY LLP<br>225 Asylum Street<br>Hartford, CT 06103<br>(860) 275-0565<br>mletten@daypitney.com<br><br>Sarah Krissoff<br>COZEN O'CONNOR<br>3 WTC, 175 Greenwich Street<br>New York, NY 10007<br>(212) 509-9400<br>skrissoff@cozen.com |

The next scheduled meet-and-confer conference between the parties to address electronic discovery issues, including the status of electronic discovery and any issues or disputes that have arisen since the last conference or Order, shall take place on: _____.
The next scheduled conference with the Court for purposes of updating the Court on electronic discovery issues has been scheduled for _____. Additional conferences, or written status reports, shall be set every four (4) weeks, as determined by the parties and the Court, based on the complexity of the issues at hand. An agenda should be submitted to the Court four (4) days before such conference indicating the issues to be raised by the parties. The parties may jointly seek to adjourn the conference with the Court by Letter-Motion at least 48 hours in advance of a scheduled conference, if the parties agree that there are no issues requiring Court intervention.

Additional Instructions or Orders, if any:

Dated:  New York, New York
        February 20, 2024

SO ORDERED.

_____
SARAH L. CAVE
United States Magistrate Judge

# EXHIBIT A

## **Production Protocol**

**Production Format**

1. **General Format**: Provide load-ready electronic productions with:

    a. A delimited data load file (.DAT) containing a line for every document, unique id number for every document (DocID), metadata fields, and native file links where applicable; and

    b. A document level text file, named for the DocID, containing the text of each produced document.

    Do not produce corresponding image renderings (e.g., TIFF or JPEG) for files in native format unless requested. If corresponding image renderings are requested, provide an Opticon image load file (.OPT) containing a line for every image file.

2. **Electronically Stored Information (ESI)**: Documents stored in electronic format in the ordinary course of business must be produced in the following format:

    a. For ESI other than the categories below, submit in native format with all metadata and either document level extracted text or Optical Character Recognition (OCR). Do not produce corresponding image renderings (e.g., TIFF or JPEG) for files in native format unless requested. If corresponding image renderings are requested, they should be converted to Group IV, 300 DPI, single-page TIFF (or color JPEG images when necessary to interpret the contents or render them intelligible.)

    b. For Microsoft Excel, Access, or PowerPoint files, submit in native format with extracted text and metadata. Data compilations in Excel spreadsheets or delimited text formats must contain all underlying data, formulas, and algorithms without redaction.

    c. For other spreadsheet, database, presentation, or multimedia formats; messaging applications and platforms (e.g., Microsoft Teams, Slack); or proprietary applications, discuss the production format.

3. **Hard Copy Documents**: Documents stored in hard copy in the ordinary course of business must be scanned and submitted as either one multi-page pdf per document or as 300 DPI single page TIFFs (or color JPEGs when necessary to interpret the contents or render them intelligible), with corresponding document-level OCR text and logical document determination in an accompanying load file.

4. **Document Identification**: Provide a unique DocID for each hard copy or electronic document, consisting of a prefix and a consistent number of numerals using leading zeros. Do not use a space to separate the prefix from numbers.

5. **Attachments**: Preserve the parent/child relationship by producing attachments as separate documents, numbering them consecutively to the parent email, and including a reference to all attachments.

6. **Metadata Production**: For each document submitted electronically, include the standard metadata fields listed below in a standard delimited data load file. The first line of the data load file shall include the field names. <u>Submit date and time data in separate fields</u>. Use these standard Concordance delimiters in delimited data load files:

    | Description | Symbol | ASCII Character |
    |---|---|---|
    | Field Separator | ¶ | 20 |
    | Quote Character | Þ | 254 |
    | Multi Entry delimiter | ® | 174 |
    | <Return> Value in data | ~ | 126 |

7. **De-duplication**: Do not use de-duplication or email threading software without the other party's approval.

8. **Password-Protected Files**: Remove passwords prior to production. If password removal is not possible, provide the original and production filenames and the passwords, under separate cover.

**Producing Data**

1. Prior to production, scan all data and media for viruses and confirm they are virus-free.

2. For productions smaller than 50 GB, submit data electronically using a secure file transfer protocol. Contact the other party's counsel for instructions. **The FTC cannot accept files via Dropbox, Google Drive, OneDrive, or other third-party file transfer sites**.

3. If you submit data using physical media:

    a. Use only CDs, DVDs, flash drives, or hard drives. Format the media for use with Windows;

    b. Use data encryption to protect any Sensitive Personally Identifiable Information or Sensitive Health Information (as defined in the instructions), and provide passwords in advance of delivery, under separate cover; and

    c. Use a courier service (e.g., Federal Express, UPS) because heightened security measures delay postal delivery.

4. Provide a transmittal letter with each production that includes:

    a. Production volume name (e.g., Volume 1) and date of production;

    b. Numeric DocID range of all documents in the production, and any gaps in the DocID range; and

    c. List of custodians and the DocID range for each custodian.

**Standard Metadata Fields**

| DAT FILE FIELDS | DEFINITIONS | POPULATE FIELD FOR: |
|---|---|---|
| DocID | Unique ID number for each document | All Documents |
| FamilyID | Unique ID for all documents in a family including parent and all child documents | All Documents |
| ParentID | Document ID of the parent document. This field will only be populated on child items | All Documents |
| File Path | Path to produced native file | All Documents |
| TextPath | Path to document level text or OCR file | All Documents |
| Custodian | Name of the record owner/holder | All Documents |
| AllCustodians | Names of all custodians that had copy of this record (populate if data was deduplicated or email threading was used) | All Documents |
| Source | Source of documents: CID, Subpoena, Third Party Data, etc. | All Documents |
| Filename | Original file name | All Documents |
| File Size | Size of documents | All Documents |
| File Extensions | Extension of file type | All Documents |
| MD5 Hash | Unique identifier for electronic data used in de-duplication | All Documents |
| PRODUCTION_VOLUME | Production Volume | All Documents |
| HASREDACTIONS | Redacted document | All Documents |
| Exception Reason | Reason for exception encountered during processing (e.g., empty file, source file, password-protected file, virus) | All Documents |
| PRODBEG | Beginning production bates number | Documents with Produced Images |
| PRODEND | Ending production bates number | Documents with Produced Images |
| PRODBEG_ATTACH | Beginning production family bates number | Documents with Produced Images |
| PRODEND_ATTACH | Ending production family bates number | Documents with Produced Images |
| Page Count | The number of pages the document contains | Documents with Produced Images |
| From | Names retrieved from the FROM field in a message | Emails |
| To | Names retrieved from the TO field in a message; the recipient(s) | Emails |
| CC | Names retrieved from the CC field in a message; the copied recipient(s) | Emails |
| BCC | Names retrieved from the BCC field in a message; the blind copied recipient(s) | Emails |
| EmailSubject | Email subject line | Emails |
| Date Sent | The date an email message was sent | Emails |
| Time Sent | The time an email message was sent | Emails |
| Date Received | The date an email message was received | Emails |
| Time Received | The time an email message was received | Emails |
| Author | File Author | Loose Native Files and Email Attachments |
| Title | File Title | Loose Native Files and Email Attachments |
| Subject | File Subject | Loose Native Files and Email Attachments |
| Date Created | Date a document was created by the file system | Loose Native Files and Email Attachments |
| Time Created | Time a document was created by the file system | Loose Native Files and Email Attachments |
| Date Modified | Last date a document was modified and recorded by the file system | Loose Native Files and Email Attachments |
| Time Modified | Last time a document was modified and recorded by the file system | Loose Native Files and Email Attachments |
| Date Printed | Last date a document was printed and recorded by the file system | Loose Native Files and Email Attachments |
| Time Printed | Last time a document was printed and recorded by the file system | Loose Native Files and Email Attachments |